Sosman, J.
Defendant Roy Einreinhofer has filed the present “emergency" motion seeking to invalidate a lien on his home. The holder of the lien, plaintiff *425 United States Trust Company (USTrust), opposes the motion on various grounds, both substantive and procedural. For the following reasons, defendant’s motion is denied.
BACKGROUND
In 1976, defendant Einreinhofer and his wife, Jo-Ann Einreinhofer, took title to real property in Sud-buiy, Massachusetts as tenants by the entirety. On March 15,1989, Einreinhofer executed a written guarantee of a loan made by USTrust to a corporation of which he was an officer. The corporation defaulted on the loan, and USTrust filed the present action to collect on the note and guaranty. On June 14, 1990, USTrust obtained and recorded a prejudgment attachment in the amount of $250,000 on Einreinhofer’s interest in the Sudbury property. On July 7, 1993, USTrust obtained judgment against Einreinhofer in tire amount of $451,821.63.
On November 16, 1993, execution issued on the judgment. On December 2, 1993, the sheriff levied on the property, recorded the execution, and then immediately suspended the levy. At no time has USTrust sought to proceed with any sheriffs sale or otherwise proceed with its levy on execution.
On May 18, 1994, Einreinhofer and his wife made and recorded their election under G.L.c. 209, §1A with respect to the Sudbury property, thereby invoking the protection of G.L.c. 209, §1.
Einreinhofer brought the present motion as an “emergency” on the alleged ground that there is a sheriffs sale scheduled for July 29, 1994. At oral argument, it was clarified that that is not a sheriffs sale being conducted on behalf of USTrust. Rather, the sheriffs sale is ostensibly being conducted by a creditor senior to USTrust. In substance, the upcoming sale is a voluntary and private sale that has been arranged by the Einreinhofers. Jo-Ann Einreinhofer has purchased the senior creditor’s interest, and a prearranged straw buyer has been lined up to purchase the property at the upcoming sheriffs sale. At oral argument, counsel for defendant himself described the transaction as a “private sale,” explaining that the present motion had been occasioned by USTrust’s refusal to release or compromise its judgment lien to facilitate that sale. Defendant’s counsel also represented at oral argument that the proceeds from the anticipated sale are more than sufficient to satisfy defendant’s obligations to USTrust in full.
DISCUSSION
Defendant’s present motion seeks to apply G.L.c. 209, §1 in a manner that is inconsistent with the plain meaning of the statute and far beyond the statute’s intended purpose.
Prior to the enactment of §1, the common law allowed a creditor to execute, seize, levy and sell a debtor’s interest in property held as tenants by the entirety. The non-debtor spouse (in that era, usually the wife) retained a right of survivorship, but had no right to continued possession. The non-debtor spouse would only regain the right to possession in the event she outlived the debtor spouse. Thus, while the wife’s right to both absolute title and possession in the event she survived her husband could not be defeated, she had no right to possession in the interim. See Raptes v. Pappas, 259 Mass. 37 (1927).
In 1980, the legislature enacted G.L.c. 209, §1 to protect a non-debtor spouse from the obvious hardship of being dispossessed of her home on account of her husband’s debts. The statute provided as follows: “The interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse.” By its plain language, the restriction on a creditor’s right to seize and execute on the debtor’s interest in the property only applies so long as the property is the other spouse’s “principal residence.” Thus, if the property itself ceases to be used as the non-debtor spouse’s principal residence — Le., she no longer needs protection to avoid being dispossessed of the roof over her head — the creditor is once again free to exercise its ordinary rights of seizure and execution.
In the present case, USTrust is not seeking to dispossess Jo-Ann Einreinhofer of her principal residence. All it is claiming is that if the Einreinhofers voluntarily sell the property (as they are now trying to do) such that the property will no longer be her principal residence, USTrust is entitled to have its lien satisfied from those proceeds. USTrust has done nothing to violate either the letter or the spirit of §1. If Jo-Ann Einreinhofer wishes to reside in the Sudbury house for the rest of her natural life, she may do so free from any interference on the part of USTrust. However, if she is relinquishing the property as her personal residence, USTrust may enforce its lien without running afoul of G.L.c. 209, §1.
Defendant argues, however, that even passively letting the recorded execution remain in place is a violation of the statute. He claims that the lien itself must be completely removed. Such a reading of the statute appears contrary to the analysis in Peebles v. Minnis, 402 Mass. 282 (1988), in which the court held that §1 did not prevent the recording of an attachment against property protected by §1. As the court explained:
It would be an unwarranted extension of the protection afforded by the statute to construe it as also prohibiting attachment of the debtor-spouse’s interest in such property. The purpose of the protection afforded is to safeguard the nondebtor-spouse’s right to continued possession of his principal residence. This right is unaffected by a creditor’s attaching the debtor-spouse’s interest in the property. The attachment is simply a *426 security device which protects the creditor’s interest in the property as against the debtor’s other creditors.
402 Mass. at 283.
In the present case, USTrust obtained and recorded a prejudgment attachment against defendant Einreinhofer’s interest in the Sudbury residence. Pursuant to G.L.c. 223, §59, that attachment would have dissolved automatically 30 days after execution was issued. It is the levy followed by suspension of levy and recording under the provisions of G.L.c. 236, §31 that effectively preserves the judgment creditor’s status as a secured creditor.
Once judgment entered in its favor in the present case, USTrust took those steps under G.L.c. 236 in order not to lose its status as an attaching creditor. Under defendant’s interpretation, USTrust would of necessity forfeit its security by winning its case. It would indeed be an anomaly to hold that USTrust may protect its rights as a creditor by obtaining a prejudgment attachment as security, but that a judgment in its favor must, of necessity, deprive it of that very same security. If that were the law, the only prudent course of action for a creditor would be to obtain a prejudgment attachment and then seek to stay one’s own civil action and purposefully avoid reducing one’s claim to judgment.
Defendant acknowledges that its interpretation of the statute would have the odd effect just described. He argues, however, that it is up to the legislature to cure the resulting anomaly. Meanwhile, he urges the court to construe the terms “seizure or execution” as used in §1 to include the mere issuance of an execution and the recording of that execution.
Of course, even if defendant were right, the supposedly improper steps taken by USTrust (the levy and recording of the execution) were taken long before the Einreinhofers made the election to bring their property within the protection of §1 at all. As originally enacted, §1 only applied to tenancies by the entirety created subsequent to its passage; See Turner v. Greenway, 391 Mass. 1002 (1984). In 1989, the legislature enacted §1A, allowing tenants by the entirety pursuant to an earlier deed to avail themselves of the protection of §1 by making such an election and recording the election with the registry of deeds. Inasmuch as the Einreinhofers’ tenancy was created in 1976, prior to the passage of §1, their interests were not protected by §1 until they made and recorded their §1A election in May of this year. At the time that USTrust’s execution was issued and recorded back in December 1993, there was no §1 protection in place for this property whatsoever and accordingly no impropriety in USTrust’s actions. After obtaining the execution, US-Trust then suspended its levy and recorded the execution to preserve its rights as a secured judgment creditor. See G.L.c. 236, §31.
Defendant counters this analysis by claiming that §1A is itself “retroactive” such that it invalidates even a previously completed and perfectly proper levy on execution. Nothing in §1A purports to give the section such sweeping retroactive effect. The section reads, in its entirety, as follows:
Tenants by the entirety holding under a deed dated prior to [February 11, 1980] may elect to have their tenancy treated as being subject to the provisions of [c. 209, §1); provided, however, that such election is made in writing, identifying the real estate with reference to the book and page of the registry of deeds wherein such deed is filed. Such election shall be executed by the grantees named as tenants by the entirety on the deed who are electing to be subject to this section, duly notarized, and recorded in said registry.
The straightforward reading means that, once an election has been made and recorded, the prohibitions of §1 henceforward apply to the property. Where §1 itself is not retroactive (per Turner, supra), there is no basis for making §1A operate so as to invalidate previous actions already taken against the properly. Of course, §1 applies once the §1A election is made, and no creditor may take any further action of “seizure or execution” against the property. Whether this literally means that a judgment creditor must forfeit its right to even record an execution (which the court doubts), it certainly does not mean that an execution recorded long prior to the §1A election must automatically be discharged.
Much of defendant’s argument purported to rely on the recent case of Somerset Savings Bank v. Goldberg, Civil Action No. 93-10109-RCL (D.Mass., May 5, 1994). In Somerset, as in the present case, an execution had been recorded prior to the tenants filing their §1A election. Despite the §1A election, the bank in Somerset sought to proceed with a sheriffs sale. The bank argued that a §1A election only affected future execution liens, but that any preexisting execution lien could still be enforced byway of sale. Thus, in discussing whether §1A was “retroactive,” the court in Somerset was facing a bank’s argument that § 1A could not block a creditor from proceeding to a sheriffs sale on its preexisting recorded execution. The court rejected that argument, as it would undermine the whole purpose of §1A. The opinion’s reference to “a retroactive application of section 1” means that §1 applies as of the date of the election and freezes a creditor who has previously recorded an execution from taking any further action with respect to levying on that execution by way of sheriffs sale. Somerset does not say that §1 extinguishes the prior recordation of the execution.[1]
Rather, a §1A election has the straightforward effect of preventing any creditor from taking any further action that would contravene §1. It does not undo previously completed actions that did not contravene §1 at the time they were taken. As such, Jo-Ann *427 Einreinhofer will enjoy the full protection accorded her by §1—ie., the bank may not sell her home on execution and dispossess her. However, the statute does not give the Einreinhofers the right to sell their residence and not satisfy preexisting liens from the sale proceeds. While the statute prevents USTrust from taking any affirmative steps to collect on its judgment lien for as long as Jo-Ann Einreinhofer lives in the house, the statute does not compel USTrust to give up any of its other rights as a secured judgment creditor.
The court further notes that the various procedural objections to defendant’s present motion have considerable merit. In the interest of speed, defendant filed the present motion under the caption of the bank’s original collection action, even though that action had long since gone to judgment and execution. Technically speaking, a new civil action for declaratory and injunctive relief should have been filed to challenge the ongoing validity of the execution as recorded. Furthermore, at the very least, Jo-Ann Einreinhofer would be a necessary party to any such action, as it is her interests that are truly at stake in this dispute over what §1 and §1A do or do not mean. Indeed, her husband does not even have standing to complain of any failure to comply with §1. See Frost v. Zullo, 399 Mass. 1005 (1987). Despite these glaring procedural defects, which would alone provide a basis for denying defendant’s motion, the court has addressed the underlying substantive legal question in response to defendant’s need for a definitive ruling on the merits in advance of the upcoming sale. In addressing those merits, the court does not intend to condone the procedurally deficient “shortcut” that defendant has taken.
ORDER
For the foregoing reasons, defendant’s Emergency Motion for Removal and Release of Execution Lien is DENIED.

 Somerset does discuss invalidation of the lien at issue in that case as a matter of bankruptcy law. In Somerset, the tenants had filed a voluntary Chapter 7 bankruptcy petition. Under bankruptcy law, “an individual debtor may exempt from property of the estate ... an interest as a tenant by the entirety ... to the extent that such interest as a tenant by the entirety ... is exempt from process under applicable non-bankruptcy law.” 11 U.S.C. §522(b)(2)(b). Furthermore, “the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is a judicial lien ...” 11 U.S.C §522(f). The debtor’s motion to invalidate the bank’s lien in Somerset was allowed as a matter of federal bankruptcy law. It was not a consequence of G.L.c. 209, §1 or §1A. In the present case, the Einreinhofers have not filed for bankruptcy.